UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| RICKY WEAVER,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ELMORE COUNTY, a political<br>subdivision of the State of Idaho;<br>DANIEL ZACHARY PARLIN; DANIEL<br>PAGE; and JOHN DEFRANCO,<br><br>　　　　Defendants. | Case No. 1:25-cv-00192-DCN<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendants Elmore County and Daniel Page's ("Defendants")
Motion to Dismiss. Dkt. 20. Defendants Zachary Parlin, Daniel Page, and John DeFranco
were involved in the prosecution of Plaintiff Ricky Weaver in Idaho state case number
CR20-18-03766. Weaver was initially convicted of soliciting someone to kill his ex-
girlfriend, Melanie Kastner. But on motion for postconviction relief, Idaho District Judge
James Cawthon found constitutional violations tainted Weaver's prosecution and vacated
Weaver's conviction. In this case, Weaver seeks monetary damages under § 1983 for the
constitutional wrongs Defendants allegedly committed during his prosecution.

Defendants ask the Court to dismiss Weaver's lawsuit because Page is entitled to
absolute prosecutorial immunity, and the Amended Complaint fails to state a claim against
the other Defendants. The Court held a hearing on Defendants' motion on January 14,

2026. Dkt. 27. Because some, but not all, of Weaver's claims fail as a matter of law, the Court GRANTS in PART and DENIES in PART Defendants' Motion to Dismiss.

## II. BACKGROUND

In December 2018, Daniel Page (as Elmore County prosecutor) and D. Zachary Parlin (as detective with the Elmore County Sherriff's Office ("ECSO")) charged Ricky Weaver with soliciting Michael Wallace to kill Weaver's ex-girlfriend, Melanie Kaster. According to the prosecution, Weaver asked Michael Wallace to kill Kastner while Weaver and Wallace were sitting in the Elmore County jail. After an adversarial probable cause hearing on January 4, 2019, Magistrate Judge David Epis found probable cause to believe Wallace committed criminal solicitation and bound Weaver over to the district court.

At trial, Melanie Kastner provided critical testimony establishing Weaver' motive. Kastner suggested Weaver wanted to kill her because she had accused him of rape— Kastner's rape allegation had landed him in the Elmore County jail in the first place—and because Weaver stood to lose custody of his child if the rape charges were proved. The evidence of the solicitation itself included Wallace's testimony that Weaver asked him to kill Kastner, as well as a map written on a napkin which showed the way to Kastner's house. John DeFranco, Weaver's defense attorney, argued that Weaver had actually asked Wallace to repossess an automobile which belonged to Weaver from Kastner's house. After a two-day trial, the jury convicted Weaver.

Although the jury heard a straightforward case, the evidence was less decisive than it appeared. On the eve of trial, Page turned over a document dated September 25, 2018, which memorialized Page's initial decision to not prosecute Weaver on Kastner's rape

MEMORANDUM DECISION AND ORDER - 2

allegations. Page wrote "Ms. Kastner has deliberately destroyed her own credibility by writing letters confessing to submitting false police reports relating to Ricky Weaver. As such, the prosecution cannot prove this event occurred beyond a reasonable doubt." Dkt. 16-1, at 6.[1] DeFranco later said he did not have time to review the document before trial, and the jury never learned that Kastner had previously admitted to lying to police about Weaver.

A year after Weaver was convicted, Page sent Weaver's new defense attorney nearly 1,200 pages of cell phone extraction data. The data had been collected by Detective Parlin in December 2018, shortly after Weaver was arrested on the solicitation charge, and had not been turned over to DeFranco before Weaver's trial. Photographs and text messages sent around the time of Weaver's alleged attacks contradicted Kastner's abuse allegations. Worse yet, it appears Weaver's cell phone may have been tampered with while in Detective Parlin's possession: certain photographs sent between Weaver and Kastner (which Weaver averred he would not have deleted) were no longer on Weaver's phone after the extraction.

Along with the cell phone extraction data, the State disclosed a recorded phone call between Weaver and his mother which Weaver placed shortly after he allegedly asked Wallace to kill Kastner. Consistent with the theory Weaver advanced at trial, Weaver asked his mom to help him get a 1992 white Honda Accord back from Kastner. Inconsistent with the State's theory, the way Weaver spoke about Kastner suggested he thought she was

---

[1] Judge James Cawthon's Order granting Weaver's postconviction relief petition, referred to throughout at Dkt. 16-1, is attached to the Amended Complaint as Exhibit A. Although courts ordinarily cannot consider matters outside the pleadings when considering a motion to dismiss, Courts may consider documents attached to the complaint without converting the motion into a motion for summary judgment. *Craig H. v. Blue Cross of Idaho*, 732 F. Supp. 3d 1258, 1265 (D. Idaho 2024).

MEMORANDUM DECISION AND ORDER - 3

going to remain in the picture for some time. Weaver asked his mom to be nice to Kastner—but to change a garage code to cut off Kastner's access.

Several other potentially exculpatory pieces of evidence would eventually come to light, including a box of undisclosed police reports and recordings found in a closet in the Elmore County Sherriff's Office, a jail security camera video (which Weaver believes may have been edited), and documents which reference recorded interviews Detective Parlin conducted with Weaver and Wallace. Neither recording has ever been found.

The record gives several indications that the lax evidence preservation and storage practices of the ECSO contributed to the State's failure to turn over exculpatory evidence. Forensic expert Wayne Joselyn, who recovered Weaver's cell phone to assess whether a cell phone extraction occurred, found the cell phone lying on a desk in the main entrance area of the building, accessible to all, and not sealed in an evidentiary container. Joselyn was not asked to fill out a chain of custody agreement and had to ask to sign one. Joselyn could not complete the extraction as Weaver's cell phone was not charged, so he returned a few days later. Again, he found the cell phone lying in a public space, and again he was not asked to fill out a chain of custody agreement. ECSO's lax evidence management policies extended beyond Weaver's cell phone. When a detective leaves employment with ESCO, the standard practice was to move all the detective's papers and belongings to a closet, apparently without reviewing them for case relevance. Office insiders suggest that practice led to the box of undisclosed evidence from Weaver's case being found in the detective's closet long after it should have been turned over.

MEMORANDUM DECISION AND ORDER - 4

Based on these revelations, Weaver initiated postconviction relief proceedings in Idaho state court, alleging the State had violated his right to due process by failing to disclose evidence under *Brady v. Maryland* and by destroying evidence in bad faith under *Arizona v. Youngblood*. District Judge James Cawthon found that the State had violated Weaver's due process rights under *Brady* by failing to disclose the cell phone extraction and the jail cell phone call with his mother. Dkt. 16-1, at 18–23. Although he stopped short of explicitly finding a *Brady* violation with respect to the undisclosed evidence found in the detective's closet, Judge Cawthon referred to the practices which led to that evidence's nondisclosure as indicating "Page's and Parlin's indifference to their duty and obligation with regards to the preservation and disclosure of evidence" constituting "legally unjustified misbehavior." *Id.* at 23–24. Judge Cawthon further found the State violated Weaver's due process rights under *Youngblood* by destroying text messages and Parlin's recorded interviews of Weaver and Wallace. *Id.* at 24–26. Judge Cawthon also found that DeFranco's representation of Weaver was ineffective under *Strickland v. Washington*. *Id.* at 27–31.

However, with respect to the jail security footage, Judge Cawthon did not find a constitutional violation. Judge Cawthon found that apparent jump cuts in the footage are caused by the motion-activated recording process: when there is movement in the cell, the camera records; when the cell is still, the camera turns off. Although the system conserves footage space, it leads to apparent jump cuts in time which can appear to be edits in the video. *Id.* at 12. Judge Cawthon also found the State did not violate *Youngblood* by deleting footage of the cell taken from camera angles DeFranco did not request. The State's policy

MEMORANDUM DECISION AND ORDER - 5

is to overwrite camera footage unless requested within 45 days. DeFranco requested one camera angle, but not the others. Because the deletion occurred pursuant to a reasonable state policy, Judge Cawthon found the State did not delete the footage from other camera angles in bad faith. *Id.* at 12–13. As to the allegation that Page or Parlin edited a still shot of Weaver's cell, Judge Cawthon found there was "simply no evidence" to support such an accusation. *Id.* at 13. And Judge Cawthon found Weaver failed to come forward with admissible evidence showing Page intimidated a witness named Carney. *Id.* at 27.

Because he found the State violated Weaver's constitutional rights, Judge Cawthon granted Weaver's petition for postconviction relief and ordered his conviction set aside.

The State declined to retry Weaver. Dkt. 21-1, at 9.

Weaver filed this action on April 4, 2025, alleging Page, Parlin, and the County are civilly liable to him under theories of malicious prosecution, civil rights violations under *Brady* and *Devereaux*, state law defamation, and intentional infliction of emotion distress. Dkt. 1.[2] Weaver also alleges DeFranco is liable for legal malpractice. Defendants Elmore County and Page filed their initial Motion to Dismiss on July 7, 2025. Dkt. 11. Defendant Parlin also filed a Motion to Dismiss. Dkt. 9. After reviewing the substance of Defendants' Motions to Dismiss, but before Defendants answered, Weaver filed an Amended Complaint. Dkt. 16. Pursuant to Ninth Circuit caselaw, the Court mooted Defendants' Motion to Dismiss. Dkt. 18. Defendants Elmore County and Page then filed the instant

---

[2] Defendants note the Amended Complaint includes allegations related to the legal standard for 42 U.S.C. § 1983 claims, and raise the possibility that Weaver means to raise a § 1983 claim distinct from his *Brady*, *Devereaux*, and other constitutional claims. Dkt. 20-1, at 5. The Court believes the allegations Defendants refer to exist to clarify that Weaver's constitutional claims arise under § 1983's cause of action. Regardless, the Court cannot identify any § 1983 action aside from those alleged in Counts I, II, III, and VI.

MEMORANDUM DECISION AND ORDER - 6

Motion to Dismiss. Dkt. 20. Weaver responded, Dkt. 24, and Defendants replied, Dkt. 25. The Court held a hearing on January 14, 2026.

The matter is now ripe for review.

## III. LEGAL STANDARD

A complaint should be dismissed under Rule 12(b)(6) if the plaintiff would not be entitled to relief even if the complaint's well-pleaded facts are true and all reasonable inferences are drawn in favor of the plaintiff. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Factual allegations need not be detailed, but they must be sufficiently plausible "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Only well-pleaded allegations of fact must be assumed true. Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is the Court "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

If the Court grants a motion to dismiss, it should also grant leave to amend unless it is beyond doubt that amendment would be futile. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

## IV. DISCUSSION

In their Motion, Defendants argue Page is protected by absolute prosecutorial

MEMORANDUM DECISION AND ORDER - 7

immunity; the Amended Complaint fails to state claims for malicious prosecution, *Brady* violations, *Devereaux* violations, or defamation; and the Amended Complaint fails to state a claim against Elmore County under *Monell*.[3]

### A. Absolute Prosecutorial Immunity

The parties agree Page is entitled to prosecutorial immunity when performing the traditional functions of an advocate. Dkts. 20-1, at 7; 24, at 6. But the parties do not agree which of Page's acts are traditionally prosecutorial.

On a motion to dismiss based on a claim of official immunity, the Court must determine whether the facts in the complaint, if taken as true, would entitle the defendant to official immunity. *Butler v. San Diego Dist. Attorney's Off.*, 370 F.3d 956, 963–64 (9th Cir. 2004). If the defendant is entitled to immunity on the face of the complaint, the claim should be dismissed. *Id.* In determining whether a prosecutor is entitled to common law immunities, courts look to "the nature of the function performed . . . ." *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997). "If the action was part of the judicial process, the prosecutor is entitled to the protection of absolute immunity whether or not he or she violated the civil plaintiff's constitutional rights." *Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003). If the action was exclusively investigatory or administrative, the prosecutor may be entitled to qualified immunity but is not entitled to absolute immunity. *Id*. at 1031. If the Court cannot determine the character of the act on the face of the complaint, the issue cannot be

---

[3] Because only Page and Elmore County moved to dismiss in this motion, the Court will not consider the viability of the claims against Parlin or DeFranco. And because Defendants do not move to dismiss the IIED claim, the Court has no occasion to consider that claim, either.

MEMORANDUM DECISION AND ORDER - 8

decided as a matter of law on a motion to dismiss. *See Hill v. City of New York*, 45 F.3d 653, 663 (2d Cir. 1995). Defendants have the burden of showing their entitlement to absolute immunity. *Stapley v. Pestalozzi*, 733 F.3d 804, 811, (9th Cir. 2013).

Thus, the Court must assess the individual acts taken by Page which Weaver alleges establish Page's liability. If the act is traditionally prosecutorial, the Court must dismiss those allegations as a matter of law. *See Broam*, 320 F.3d at 1029–30. Although distinguishing between traditionally prosecutorial and administrative/investigatory functions is an "inexact science," *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012), case law provides a few categorical distinctions helpful here.

"A prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction is a violation of due process under *Brady v. Maryland*, . . . . It is, nonetheless, an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages." *Broam*, 320 F.3d at 1030; *see also Griffin v. Asla*, 2023 WL 7411535 (9th Cir. Nov. 9, 2023) (citing *Broam*, 320 F.3d 1023). "[A] prosecutor enjoys absolute immunity from a suit alleging that he maliciously initiated a prosecution, used perjured testimony at trial, or suppressed material evidence at trial." *Genzler v. Longanbach*, 410 F.3d 630, 637 (9th Cir. 2005). Prosecutors are also absolutely immune for their direct participation in probable cause hearings. *Id.* When prosecutors interview witnesses, courts apply a functional analysis: if the prosecutor conducted the interview to prepare for trial, the act is entitled to absolute immunity; if the interview was police-type investigative work, qualified immunity may attach. *Id.* at 638. Prosecutors are *not* entitled to absolute immunity respecting statements made to the press, *Milstein v.*

MEMORANDUM DECISION AND ORDER - 9

*Cooley*, 257 F.3d 1004, 1010 (9th Cir. 2001), or for investigatory acts taken outside the supervision of the judiciary, including supervision of arrests, *Lacey*, 693 F.3d at 913–14.

Weaver argues Page is not absolutely immune with respect to several of Page's alleged acts: Page lied during Weaver's probable cause hearing; Page intimidated witnesses; Page was present when officers made arrests; Page failed to properly maintain evidence; Page publicized information to media outlets; and Page modified or destroyed reports and logs. The Court disagrees.

Page is entitled to absolute immunity regarding his representations at the probable cause hearing because his presentation there was an exercise of his prosecutorial function. *Genzler*, 410 F.3d at 637 (citing *Burns v. Reed*, 500 U.S. 478, 491 (1991)). Page is also entitled to absolute immunity to the extent he failed to properly maintain or disclose evidence for the same reason. *Broam*, 320 F.3d at 1030. Those allegations must, therefore, be dismissed.

Regarding allegations that Page intimidated witnesses, the Court cannot determine the immunity issue on the Amended Complaint because the allegation is not well pleaded. The only factual allegation of witness intimidation is that "Mr. Page also intimidated and threatened witnesses into testifying what he wanted them to say." Dkt. 16, at 44. That allegation is a conclusory recitation of labels which the Court is not required to presume on a motion to dismiss. *Twombly*, 550 U.S. at 555; *see also Sprewell*, 266 F.3d at 988. And, although Weaver is correct that Page is not entitled to absolute immunity with respect to his presence at arrests or statements to the press, *see Milstein*, 257 F.3d at 1010; *Lacey*, 693 F.3d at 913–14, the Amended Complaint fails to explain how either act contributed to a

MEMORANDUM DECISION AND ORDER - 10

violation of Weaver's rights.

Because Page is absolutely immune from the mine run of allegations against him, and because the remaining acts do not raise a reasonable inference that Page violated Weaver's rights, the Court GRANTS the Motion as to Page.

## B. Malicious Prosecution

Turning to the sufficiency of Weaver's pleadings against the County, Weaver first raises a malicious prosecution claim. "Federal courts rely on state common law for elements of malicious prosecution." *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019). In Idaho, "[t]o recover under a malicious prosecution claim, a plaintiff must prove (1) that there was a prosecution; (2) that it terminated in favor of the plaintiff; (3) that the defendant was the prosecutor; (4) malice; (5) lack of probable cause; and (6) damages sustained by the plaintiff." *Berian v. Berberian*, 483 P.3d 937, 944–45 (Idaho 2020) (citation modified). Additionally, "[i]n order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted him with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citation modified).

Defendants argue that Weaver's malicious prosecution claim fails as a matter of law because a magistrate judge found probable cause to prosecute him and because Weaver's criminal proceedings did not end with his complete exoneration. The Court addresses each argument in turn.

*1. Effect of the Magistrate Judge's Order Binding Weaver Over*

Defendants argue that the preliminary hearing on January 4, 2019, conclusively established there was probable cause to prosecute Weaver. Under Idaho law, a magistrate judge must find probable cause to believe the defendant committed the charged crime to bind the defendant over for trial. Idaho Code § 19-804. Weaver argues Defendants' failure to turn over evidence prevents the Court from according the preliminary hearing preclusive effect.

In Idaho, there are two strains of case law which discuss when a preliminary hearing bars subsequent civil rights actions. In *Picatti v. Miner*, 449 P.3d 403 (Idaho 2019), the Idaho Supreme Court discussed the preclusive effect of undisturbed preliminary hearings in subsequent civil rights actions generally. And in *Berian v. Berberian*, the Idaho Supreme Court discussed full disclosure to a detached magistrate, a traditional defense to malicious prosecution. Although the interaction between the two doctrines is not perfectly clear, the Court need not square them at this stage. Neither doctrine bars Weaver's malicious prosecution claim on the present record.

In *Picatti*, the Idaho Supreme Court stressed that "the decision to bind a defendant over for criminal prosecution does not, on its own, invoke collateral estoppel to bar the relitigation of probable cause in a subsequent section 1983 claim." 449 P.3d at 412. Courts must review the preliminary hearing record to determine, *inter alia*, whether the parties had a full and fair opportunity to litigate the issue of probable cause. *Id.* In determining whether the plaintiff had a full and fair opportunity to litigate probable cause, the Idaho Supreme Court considered the fact that the magistrate judge bound the plaintiff over after

MEMORANDUM DECISION AND ORDER - 12

"hearing each party's full account." *Id.* at 413. Likewise, in *Berian*, the Idaho Supreme Court recognized that a magistrate judge's finding of probable is conclusive in a subsequent malicious prosecution action "where there has been a full disclosure to the magistrate." 483 P.3d at 945 (citation modified).

Thus, under both the traditional preclusion doctrine and the more specific full disclosure to a magistrate defense, the Court must be able to determine from the record that the malicious prosecution plaintiff was fully and fairly heard on the issue of probable cause. Otherwise, a magistrate judge's finding of probable cause does not bar a malicious prosecution claim. *See Picatti*, 449 P.3d at 413; *Berian*, 483 P.3d at 945–46.

Here, the Court cannot find there was a full and fair opportunity to litigate the issue of probable cause or a full disclosure to a magistrate as a matter of law. Neither party has clearly indicated what evidence was disclosed to the magistrate judge, and Judge Cawthon's *Brady* findings suggest the withheld information could have materially impacted the magistrate judge's findings. Until the details of the probable cause hearing are submitted to the Court for review, the Court cannot determine whether the probable cause hearing precludes Weaver's claim.

### 2. Termination of Criminal Proceedings in Favor of the Accused

Defendants also question whether proceedings ended in Weaver's favor. Although Weaver's postconviction proceedings ended with his conviction vacated, Defendants argue there has never been an affirmative finding Weaver *did not* solicit Wallace to kill Kastner.

Defendants construe the "favorable termination" element too narrowly. For purposes of malicious prosecution claims, a prosecution ends in a criminal defendant's

MEMORANDUM DECISION AND ORDER - 13

favor if, *inter alia*, the conviction is "declared invalid by a state tribunal authorized to make such determination . . . ." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). Judge Cawthon declared Weaver's conviction invalid pursuant to his authority under Idaho's Uniform Post-Conviction Procedure Act, Idaho Code § 19-4901 *et seq*. Thus, Weaver's prosecution terminated in his favor.

Accordingly, the Court DENIES Defendants' Motion to Dismiss with respect to Weaver's malicious prosecution claim.

### C. Weaver's *Brady* Claim

Defendants argue Weaver's complaint fails to state a *Brady* claim because it incorporates all the general allegations by reference, which puts too much of a burden on the Defendant to figure out which allegations substantiate which claim. But a complaint does not fail to state a claim or barely recite the elements of a claim merely because it incorporates factual allegations by reference. *See* Fed. R. Civ. P. 10(c). If Defendants believed they were incapable of preparing a defense because the Amended Complaint was ambiguous, the proper remedy would have been to seek a more definite statement before answering. Fed. R. Civ. P. 12(e). Doing so would almost certainly be unnecessary here: Judge Cawthon's decision highlights several factual allegations which could substantiate a *Brady* claim. And the defendant bears the burden of showing why allegations are legally insufficient on a motion to dismiss anyway. Because Weaver's incorporation of fact pleadings by reference is permissible, Defendants' Motion is DENIED with respect to Weaver's *Brady* claim.

MEMORANDUM DECISION AND ORDER - 14

### D. Weaver's *Devereaux* Claim

Defendants object to Weaver's *Devereaux* claim because the Amended Complaint does not identify any evidence which they allegedly fabricated, and because any fabrication allegations which overlap with Judge Cawthon's findings must be dismissed under issue preclusion.

Under *Devereaux v. Abbey*, "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." 263 F.3d 1070, 1074–75 (9th Cir. 2001). "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).

Weaver points to two allegations in the Amended Complaint which, he alleges, substantiate a *Devereaux* claim: the jail video of him and Wallace that appeared edited, Dkt. 16, at ¶ 30(b), and the failure to turn over the cell phone extraction evidence, Dkt. 16, at ¶ 30(a). *See* Dkt. 24, at 9–10.

The allegation that the video appeared edited cannot substantiate a *Devereaux* claim. To the extent the allegation is that the video was *opportunistically cut*, such does not constitute fabrication of evidence. An opportunistically cut but admittedly authentic video is not false evidence. Though it may be misleading, a defendant's remedy for misleading or confusing evidence is through evidentiary objections rather than federal civil rights actions. *See, e.g.*, Fed. R. Evid. 106; 403.

If the allegation is, instead, that the video was *modified* in some way, Weaver's

allegations are barred by Judge Cawthon's finding that there was no evidence Page

intimidated witnesses or modified or destroyed report logs.

Pursuant to the Full Faith and Credit Act, federal courts give state court judgments

preclusive effect if the judgment is entitled to preclusive effect under that state's law. 28

U.S.C. § 1738. Idaho courts apply preclusion when:

> (1) the party against whom the earlier decision was asserted had a full and
> fair opportunity to litigate the issue decided in the earlier case; (2) the issue
> decided in the prior litigation was identical to the issue presented in the
> present action; (3) the issue sought to be precluded was actually decided in
> the prior litigation; (4) there was a final judgment on the merits in the prior
> litigation; and (5) the party against whom the issue is asserted was a party or
> in privity with a party to the litigation.

*Ticor Title Co. v. Stanion*, 157 P.3d 613, 618 (Idaho 2007).

Weaver had a full and fair opportunity to litigate the issue of whether the jail video

was edited. Judge Cawthon's order specified that he heard testimony and argument on the

issue from a Lt. Gavin, who credibly explained the system's operation. Dkt. 16-1, at 12–

13. The issue is identical to the issue here, because both Judge Cawthon and this Court are

asked to determine whether the video was modified. The issue was already decided, as

Judge Cawthon found Weaver failed to show "by a preponderance of the evidence the jail

footage or the still photos were redacted or altered." Dkt. 16-1, at 12–13. Judge Cawthon's

decision was a final judgment on the merits. Even if the state could seek to retry Weaver,

the order was "sufficiently firm to be accorded conclusive effect" because the parties were

fully heard, Judge Cawthon supported his decision with a reasoned opinion, and the

decision was subject to appeal. *See Picatti*, 449 P.3d at 412. Finally, Weaver was a party

to his own postconviction relief proceedings. Thus, Judge Cawthon's findings regarding

MEMORANDUM DECISION AND ORDER - 16

the alleged modification of the jail video are preclusive in these proceedings and the Motion to Dismiss is GRANTED with respect to allegations that Defendants edited or otherwise modified the jail house video.

The cell phone extraction cannot support a *Devereaux* violation, either. Although the Amended Complaint alleges the cell phone extraction was turned over late—and that evidence was destroyed during the extraction—the Amended Complaint does not contain any allegations suggesting the cell phone evidence was otherwise modified. *Devereaux* applies to prosecutions based on deliberately fabricated evidence, i.e., making evidence out of whole cloth or altering evidence in some way. *See Devereaux*, 263 F.3d at 1074–75. Late disclosure and destruction of evidence sound in *Brady*, not *Devereaux*. Accordingly, the Motion to Dismiss is GRANTED with respect to the cell phone extraction-based *Devereaux* claims as well.

Because Defendants are correct that Weaver's contentions regarding the jail house video are subject to issue preclusion, and because the cell phone extraction sounds in *Brady* rather than *Devereaux*, Defendants' Motion to Dismiss is GRANTED with respect to Weaver's *Devereaux* claim.

### E. Weaver's Defamation Claim

Defendants argue Weaver's defamation claim fails because their statements are protected by Idaho's litigation privilege. Weaver argues he has adequately pleaded defamation by alleging that Page and Detective Parlin "cause[d]] information to be publicized to media outlets widely disseminated to the public outside of the judicial or investigatory process" (Dkt. 16, at ¶ 81), and "engaged in a substantial effort raising the

MEMORANDUM DECISION AND ORDER - 17

profile of this matter in the public" (Dkt. 16, at ¶ 65). Weaver also points out that prosecutors are not absolutely immune for statements made to the press. Dkt. 24, at 11 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 277 (1993)).

Defamation is a state law claim subject to Idaho's litigation privilege law.[4] Under Idaho law,

> as a general rule, where an attorney is sued by the current or former adversary of his client, as a result of actions or communications that the attorney has taken or made in the course of his representation of his client in the course of litigation, the action is presumed to be barred by the litigation privilege.

*Taylor v. McNichols*, 243 P.3d 642, 657 (Idaho 2010). To overcome that presumption, the plaintiff must plead facts "sufficient to show that the attorney has engaged in independent acts, that is to say acts outside the scope of his representation of his client's interests, or has acted solely for his own interests and not his client's." *Id.*

Here, Weaver has pleaded no facts from which the Court could infer that Page (or any of the Defendants) made statements to anyone outside of court. Even if the Court could draw that inference based on Weaver's generalized allegations that unspecified Defendants

---

[4] Courts in the Ninth Circuit have reached contradictory conclusions on whether they are bound by state litigation privilege law. *Compare Huffman v. JP Morgan Chase Bank, NA*, 2023 WL 2691455, *4 (D. Ariz. Mar. 29, 2023), *aff'd sub nom. Huffman v. JP Morgan Chase Bank, N.A.*, 2026 WL 396536 (9th Cir. Feb. 12, 2026) *with Homeland Housewares, LLC v. Sensio, Inc.*, 2006 WL 8434684, *5 (C.D. Cal. Sept. 13, 2006). The confusion comes from two different meanings the word "privilege" can take in law: one is a defense to liability; the other is a right to refuse to testify. Defenses to liability are state substantive law which federal courts are bound to apply to state law claims under the *Erie* doctrine. Testimonial privileges are procedural, and, under the Ninth Circuit's interpretation of Rule 501, the federal common law of privilege applies to supplemental state law claims. *Agster v. Maricopa Cnty.*, 422 F.3d 836 (9th Cir. 2005). The litigation privilege is an affirmative defense to liability. Because Rule 501 applies to testimonial privileges, not defenses to liability, Rule 501 is inapplicable here. *See* Fed. R. Evid. 501 cmt., "Notes of Conference Committee, House Report No. 93–1597." Because the litigation privilege is a defense to liability, the Court must apply Idaho law here. *See Graham-Sult v. Clainos*, 756 F.3d 724, 741 (9th Cir. 2014) (applying California litigation privilege as a substantive defense).

MEMORANDUM DECISION AND ORDER - 18

made unspecified statements to unspecified media outlets, there are no facts which would overcome Idaho's presumption that the action is barred under *Taylor*. There are no allegations showing Page had engaged in independent acts or acted solely for his own interests. Although statements to the press are not within traditional prosecutorial functions for § 1983 purposes, they may be in the interests of the state and thus subject to the state litigation privilege. Accordingly, the Motion to Dismiss is GRANTED as to Weaver's defamation claim.

### F. Weaver's Claims Against Elmore County

Finally, Defendants argue the complaint fails to specify a policy, custom, or established practice giving rise to *Monell* liability. Weaver, in response, identifies the County's discovery and evidence management practices as the relevant *Monell* policy.

In *Monell v. Department of Social Services of New York City*, the Supreme Court held that plaintiffs cannot hold a municipality liable under § 1983 unless they can show: (1) he or she was deprived of a constitutional right; (2) the municipality (or entity) had a policy or custom; (3) the policy or custom amounted to deliberate indifference to his or her constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *See Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). Assuming the other elements of *Monell* liability are met, a municipality may be held liable for its agent's constitutional violation even though the municipal agent is personally immune. *See Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 603–04 (9th Cir. 2019).

There are several allegations in the complaint, and findings made by Judge

MEMORANDUM DECISION AND ORDER - 19

Cawthon, suggesting the Elmore County Sherriff's and Prosecutor's Offices had lax policies and customs regarding the cataloguing, chain of custody, and disclosure of evidence. Forensic expert Wayne Joselyn's experience indicates that evidence was not kept securely or well tracked, Dkt. 16-1, at 8–9, and administrative assistant Susie McKerchie testified in the postconviction relief proceedings that "when a detective leaves, they move all of the contents of their desk into the closet," Dkt. 16-1, at 10. Joselyn's repeated experience and McKerchie's testimony (which appears to describe a usual practice) together raise the reasonable inference that lax evidence management practices are more than mere isolated instances and could have contributed to the *Brady* violation in his case. Accordingly, the Court finds Weaver has adequately pleaded a *Monell* claim.

### G. Leave to Amend

Defendants argue Weaver's counsel had the opportunity to review their motion to dismiss prior to filing his amended complaint, and that the Court should, therefore, dismiss without leave to amend. The Court has discretion regarding whether to grant leave to amend, but should grant leave freely unless it appears to a legal certainty that amendment would be futile or the plaintiff has repeatedly failed to cure the complaint's deficiencies. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

It is a legal certainty that Weaver cannot recover from Page on his *Brady* claim, and that no amendment could cure that deficiency. *See Broam*, 320 F.3d at 1030. Weaver may not amend his *Brady* claim against Page. But the Court is reticent to deny leave to amend based on a failure to cure deficiencies before the Court has actually found deficiencies. Thus, as to all other claims, the Court GRANTS Weaver leave to amend his complaint.

MEMORANDUM DECISION AND ORDER - 20

## V. CONCLUSION

Because Page is entitled to absolute prosecutorial immunity for his traditionally prosecutorial acts, the allegations in the Amended Complaint which seek to impose liability on him for such acts must be dismissed. And because Weaver's *Devereaux* and defamation claims fail under issue preclusion and the litigation privilege, the Court must dismiss those claims as well. However, the Court cannot dismiss Weaver's *Brady* claim against the County based on the arguments Defendants raise against it, and Weaver successfully pleads *Monell* liability. The Motion to Dismiss must, therefore, be GRANTED in PART and DENIED in PART.

## VI. ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss (Dkt. 20) is GRANTED in PART and DENIED in PART as outlined above.

2. Plaintiff is GRANTED leave to amend as to all claims other than his *Brady* claim against Page. Any such Second Amended Complaint must be filed within 30 days from the entry of this Order.

DATED: May 4, 2026

David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 21